[Cite as *State v. Ford*, 2014-Ohio-1859.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY  COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25796 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 99-CR-3024 |
| v. | : | |
| | : | |
| DAMIEN D. FORD | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on the 2nd day of May, 2014.

· · · · · · · · · ·

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

DAMIEN D. FORD, #400523, Lebanon Correctional Institution, Post Office Box 57, Marion, Ohio 43302
        Defendant-Appellant, *pro se*

· · · · · · · · · · · ·

HALL, J.,

{¶ 1}    Damien D. Ford appeals pro se from the trial court's May 20, 2013 amended

termination entry correcting a post-release control defect and correcting, nunc pro tunc, both a Crim.R. 32 issue and a clerical error regarding the offense level for his aggravated-murder conviction.

{¶ 2} The record reflects that Ford was convicted in 2000 on charges of aggravated murder, aggravated robbery, having weapons while under disability, and related firearm specifications. On appeal, this court determined that the trial court had failed to make findings necessary to impose maximum, consecutive sentences. *See State v. Ford*, 2d Dist. Montgomery No. 18498, 2001 WL 958845 (August 24, 2001). On remand, the trial court resentenced Ford to maximum, consecutive sentences in 2001. He did not appeal.

{¶ 3} In 2012, Ford filed a pro se motion for another resentencing. (Doc. #9). He raised four arguments. First, he argued that the trial court's 2001 resentencing entry failed to recite the manner of conviction as required by Crim.R. 32(C). Second, he claimed the 2001 entry lacked proper post-release control notification. Third, he asserted that the 2001 entry erroneously imposed a life sentence rather than an indeterminate term of fifteen years to life. Fourth, he maintained that the 2001 entry incorrectly identified his aggravated-murder conviction as a first-degree felony rather than an unclassified felony.

{¶ 4} The trial court addressed Ford's motion during a May 15, 2013 hearing. He participated in the hearing via video conferencing. At the outset, the trial court denied his request for a continuance and for appointment of counsel. The trial court proceeded to explain that the remedy for a Crim.R. 32(C) violation, which it found to exist, was a nunc pro tunc entry. The trial court also recognized an error in the imposition of post-release control and proceeded to advise Ford of the nature and duration of a post-release control obligation for the

aggravated-robbery and weapons-under-disability convictions. [1] The trial court additionally explained that Ford was not entitled to an indeterminate sentence of fifteen years to life because that sentence applied to convictions for murder, not aggravated murder. The trial court did recognize, however, that the 2001 resentencing entry incorrectly identified Ford's aggravated murder conviction as a first-degree felony rather than an unclassified felony. The trial court characterized the mistake as a clerical error given that Ford actually was sentenced for aggravated murder as an unclassified offense. Following the hearing, the trial court filed a May 20, 2013 amended termination entry and entry nunc pro tunc. The May 20, 2013 filing constituted an amended termination entry insofar as it corrected a post-release control problem. The filing constituted a nunc pro tunc entry insofar as it set forth the manner of Ford's conviction in compliance with Crim.R. 32(C) and corrected a clerical error in the felony degree of aggravated-murder.

{¶ 5} Ford advances the following two "assignments of error" on appeal:

I. Whether after-the-fact (ex post facto) application of a new judicial ruling to a case which has become final offends due process, implicates fundamental fairness, and is the very antithesis to the State and Federal Constitutions['] prohibition against Ex Post Facto laws. (Citations omitted).

II. Whether, and where a trial court fails to apply the law as written with respect to a criminal sanction, the resulting attempted sentence is a mere nullity and void[.] (Citations omitted).

---

[1] Parenthetically, we note that Ford's aggravated-murder conviction subjected him to lifetime parole if he is released from prison, not post-release control. Therefore, the trial court properly advised Ford about parole with regard to the aggravated-murder conviction.

{¶ 6}  The essence of the first assignment of error is that the trial court erred in not appointing Ford counsel and conducting a de novo resentencing hearing. He argues that the law in effect at the time of his original conviction in 2000 mandated a de novo hearing to correct a post-release control problem. He insists that denying him a de novo hearing violated ex-post-facto principles. We disagree. This court addressed an analogous situation in *State v. Reid*, 2d Dist. Montgomery No. 24841, 2012-Ohio-2666. There the defendant was convicted in 2002 on charges including murder. Thereafter, he was resentenced in 2011 to correct an error in the imposition of post-release control. At that time, the defendant argued that he was entitled to de novo resentencing. The trial court disagreed, and we affirmed. In so doing, we reasoned:

> Reid contends that because his sentence, as first imposed, included an incomplete provision for post-release control, his sentence was completely void, and he was therefore entitled to a new sentencing hearing when he was re-sentenced in 2011. *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, arguably supports that proposition, but that holding in *Bezak* has been expressly overruled by *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 36.
>
> Under *Fischer*, it is clear that only the defective aspect of the sentence—the improper, or incomplete, imposition of post-release control—is void. The remainder of the sentence is valid, and has res judicata effect. *Id.* Therefore, the scope of Reid's 2011 re-sentencing hearing was limited to correcting the imposition of post-release control.

*Id.* at ¶ 8-9.

{¶ 7}  We also rejected an ex-post-facto argument in *Reid*, reasoning:

The Ohio General Assembly enacted its own remedy to the problem posed by sentences with omitted, or defective, post-release-control provisions in R.C. 2929.191, by providing that a trial court could correct the sentencing entry, nunc pro tunc. Reid contends that application of this law to him violates the Retroactive Laws provision in Section 28, Article II, of the Ohio Constitution.

*State v. Fischer*, supra, ¶ 40, held, independently of R.C. 2929.191, that a sentence lacking a proper provision for post-release control is void, to that limited extent, and the void part of the sentence can be corrected at any time, without having to re-visit other aspects of the sentence. At the re-sentencing hearing, the trial court made it clear that it was proceeding under the authority of *State v. Fischer*. Therefore, even if Reid were correct in his assertion that R.C. 2929.191 could not be applied to his case because of the Retroactive Laws provision, it would be immaterial, since the trial court had the independent authority to correct its partially void sentence under *State v. Fischer*.

Before *State v. Fischer*, the Supreme Court of Ohio held in *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, ¶ 35, that for sentences imposed before July 11, 2006 (which would include Reid's sentence), in which the trial court failed to properly impose post-release control, a full, de novo sentencing hearing is required, whereas for sentences imposed on or after that date, the nunc pro tunc correcting procedure set forth in R.C. 2929.191 could be used. But that holding in *Singleton* was predicated upon *State v. Bezak*, supra, which was overruled by *State v. Fischer*. Therefore, the holding in *State v.*

*Singleton* has been effectively overruled by the holding in *State v. Fischer*, supra.

* * *.

(*Id.* at ¶ 19-21).

**{¶ 8}**    To avoid the impact of the foregoing case law, Ford claims that application of *Fischer* itself to his case constitutes an ex-post-facto violation. He maintains that applying *Fischer* is unconstitutional because a new judicial ruling cannot be applied retroactively to a case that has become final. Ford's premise is wrong. *Fischer* can be applied here because the post-release-control aspect of his sentence was *void*, not final. *Fischer* at ¶ 26, 30.   Therefore, under *Fischer*, the trial court properly corrected the post-release control error in a limited hearing rather than granting Ford a de novo resentencing. *Id.* at ¶ 26, 29.

**{¶ 9}**    We also see no error in the trial court's refusal to appoint counsel to assist Ford at the most recent resentencing hearing. As set forth above, the hearing addressed four issues. None of them entitled him to the appointment of counsel. In *Fischer*, the Ohio Supreme Court recognized that an appellate court may correct an error in the imposition of post-release control itself without remanding for a hearing. *Id.* at ¶ 29-30. Other courts have held that appointment of counsel is not required even when a trial court does hold a resentencing hearing to correct a post-release control error. *See State v. Stallworth*, 9th Dist. Summit No. 25461, 2011-Ohio-4492, ¶ 29 (citing with approval cases from the Fourth, Fifth, and Eleventh Districts "reject[ing] the argument that a trial court is required to appoint counsel for purposes of a post-release control resentencing hearing"); *State v. Schleiger*, 12th Dist. Preble No. CA2011-11-012, 2013-Ohio-1110, ¶ 6 (finding no right to counsel at a resentencing hearing to impose post-release control because "a trial court has no discretion and is required and limited to imposing

postrelease control the way it was required to do in the first place"). In *Stallworth*, the Ninth District reasoned:

> Stallworth appeared at his R.C. 2929.191 hearing by way of video conference. He did not have an attorney representing him at the hearing. When he indicated that he would like to have his former appointed counsel present, the trial judge informed him that she was not required to appoint him counsel for purposes of the R.C. 2929.191(C) hearing. Stallworth argues that the trial court erred in its determination. *See* Crim.R. 44(A) (providing that, absent a waiver, "[w]here a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right").

> Several other district courts have rejected the argument that a trial court is required to appoint counsel for purposes of a post-release control resentencing hearing. *See State v. Griffis*, 5th Dist. No. CT2010-57, 2011-Ohio-2955, at ¶ 24-34 (holding that imposition of post-release control at resentencing was a ministerial act and the defendant did not suffer any prejudice as a result of not having counsel there); *State v. Walker*, 11th Dist. No.2009-L-170, 2011-Ohio-401, at ¶ 28-29 (rejecting defendant's argument that he was unconstitutionally deprived of counsel at resentencing hearing because his post-release control term was mandatory, the hearing was limited to its imposition, and R.C. 2929.191 "does not provide * * * [for the] right to be represented by counsel * * * at the hearing"); *State v. Davis*, 4th Dist. No. 10CA9, 2010-Ohio-5294, at ¶ 2 (holding that

defendant's right to counsel was not violated at the resentencing hearing because it was "ministerial" and "not a 'critical stage' of the proceedings"). This view comports with the Supreme Court's treatment of post-release control errors. *See*, *e.g.*, *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, at ¶ 29-30 (recognizing that even appellate courts have the authority to correct a post-release control defect in the absence of a remand for resentencing because no sentencing discretion exists). It also comports with the fundamental understanding that the right to counsel exists to protect an "accused's right to a fair trial." *U.S. v. Wade* (1967), 388 U.S. 218, 226. Post-release control defects do not affect the merits of a defendant's underlying conviction or the lawful elements of his existing sentence. *Fischer* at paragraph three of the syllabus. Stallworth has not explained how the absence of counsel at a post-release control resentencing would negatively impact a defendant's fair trial rights. *See* App.R. 16(A)(7). He also has not explained how he was prejudiced by the absence of counsel at his resentencing, as the record reflects that the resentencing resulted in the proper imposition of post-release control. *Id.*[2]

---

[2] We do not necessarily agree that resentencing to include post-release control is merely a "ministerial act," as indicated in two of the cases cited therein, particularly when, as here, the court was required to determine whether post-release control could be applied to an already completed sentence. Nonetheless, the proceeding was not a critical stage to which the right to counsel applied.

{¶ 10} Upon review, we find the foregoing reasoning persuasive. We follow the Fourth, Fifth, Ninth, Eleventh, and Twelfth Districts in holding that Ford had no right to counsel for purposes of the hearing limited to the correction an error in the imposition of post-release control.[3]

{¶ 11} Counsel also was not required to be appointed for the other three issues raised in Ford's 2012 motion. As the trial court explained, the remedy for a Crim.R. 32(C) violation is a nunc pro tunc entry reciting the manner of conviction. *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142. No hearing is required to correct a clerical omission in a final judgment regarding the manner of conviction. Such an omission is a matter of form, not substance, and "a nunc pro tunc judgment entry issued for the sole purpose of complying with Crim.R. 32(C) to correct a clerical omission in a final judgment entry is not a new final order from which a new appeal may be taken." *Id.* at ¶ 20. It follows, then, that Ford was not entitled to counsel with regard to the Crim.R. 32(C) issue he raised.

{¶ 12} We reach the same conclusion with regard to the other two issues raised in Ford's 2012 motion. As set forth above, he argued that the 2001 resentencing entry erroneously imposed a life sentence rather than an indeterminate term of fifteen years to life. He also maintained that the 2001 resentencing entry incorrectly identified his aggravated murder conviction as a first-degree felony rather than an unclassified felony. It appears to us that both of these issues could have been raised in a direct appeal from Ford's 2001 resentencing. Because they were not, the trial court could have invoked res judicata and not addressed them.

---

[3]We note that this issue is pending before the Ohio Supreme Court on a certified conflict between the Twelfth District in *Schleiger*, *supra*, and the Third District, which held in *State v. Peace*, 3d Dist. Hancock No. 5-12-04, 2012-Ohio-6118, that a defendant does have a right to counsel at a resentencing to correct an error in the imposition of post-release control. The order certifying a conflict was filed on September 25, 2013 in *State v. Schleiger*, S.Ct. No. 2013-1046. Oral argument is scheduled for May 14, 2014.

{¶ 13}   In any event, the trial court correctly explained that Ford was not entitled to an indeterminate sentence of fifteen years to life in prison. At all relevant times, that penalty has applied to murder, not aggravated murder. *See* R.C. 2929.02(B). Therefore, the failure to impose an indeterminate sentence for the aggravated-murder conviction was not error at all. As for the 2001 resentencing entry's reference to aggravated murder as a first-degree felony, the trial court reasonably concluded that this was a clerical error. It noted that Ford actually was sentenced for the unclassified felony of aggravated murder. The trial court corrected the mistaken prior reference to a first-degree felony with a nunc pro tunc entry. We see no error in this decision, and no basis for the appointment of counsel with regard to the issue. *Cf. State v. Wilson*, 2d Dist. Montgomery No. 24352, 2011-Ohio-5990, ¶ 15-17 (recognizing that a trial court may use a nunc pro tunc entry to correct a clerical error in a reference to the felony level of a defendant's offense).   Accordingly, the first assignment of error is overruled.

{¶ 14}   In his second assignment of error, Ford addresses a variety of issues. He first suggests that the 2001 resentencing entry was void because it sentenced him to life in prison but failed to mention parole eligibility after twenty years. The trial court addressed this issue during the May 15, 2013 hearing, pointing out that Ford's 2012 motion failed to raise it. (May 15, 2013 Tr. at 10).

{¶ 15}   We note too that the 2001 entry's failure to mention Ford's parole eligibility after twenty years did not render that entry void or constitute grounds for another resentencing. *See State v. Burns*, 2d Dist. Montgomery No. 19931, 2004-Ohio-80, ¶ 7 (finding no prejudice where the trial court sentenced the defendant to life in prison for aggravated murder without specifying when he would be eligible for parole where, as here, the only option under the law at the time

was parole eligibility after twenty years). In any event, the trial court corrected the earlier omission about parole eligibility in its May 20, 2013 amended termination entry.

{¶ 16} Ford next contends the trial court's May 20, 2013 amended termination entry failed to impose post-release control properly. In particular, he claims the entry did not indicate whether his post-release control will be mandatory or discretionary. Ford also argues that he completed his sentence for at least one offense before the trial court filed its May 20, 2013 amended termination entry. Therefore, he claims post-release control cannot be imposed for that offense. The former argument lacks merit. The May 20, 2013 termination entry states that Ford "**will**" be supervised by the Parole Board for five years for his aggravated robbery conviction. (Doc. #15 at 2). The entry further provides that he "**may**" be supervised for three years for his weapons-under-disability conviction. (*Id*.). This language adequately addresses the mandatory-versus-discretionary nature of post-release control.

{¶ 17} As for Ford's argument that he has completed his sentence for at least one offense and cannot be placed on post-release control for it, this court previously rejected an identical argument in 2011 in the case of *State v. Norman*, 2d Dist. Montgomery No. 24445, 2011-Ohio-5969, and in 2013 in the case of *State v. Johnston*, 2d Dist. Montgomery No. 25652, 2013-Ohio-4401. In both cases, this court reasoned that a trial court could resentence to impose post-release control for each of multiple offenses as long as a defendant had not completed his entire sentence. However, after the trial court reimposed post-release control for Ford's charges, the Ohio Supreme Court reached a conclusion contrary to our holdings in *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382. It  held that "a trial court cannot add a term of postrelease control as a sanction for a particular offense after the defendant has already served the

prison term for that offense, even if the defendant remains in prison for other offenses." *Id.* at ¶ 1.

**{¶ 18}** In the present case, Ford's original 2000 termination entry imposed a life sentence for aggravated murder, a ten-year sentence for aggravated robbery, a one-year sentence for having weapons while under disability, and a three-year sentence for merged firearm specifications. The trial court ordered the foregoing sentences to be served consecutively and ordered the three-year firearm term to be served first. The trial court did not specify the order in which the other sentences were to be served. It simply referred to them as being consecutive to each other.

**{¶ 19}** In any event, it is beyond dispute that the three-year firearm sentence was completed long ago. Pursuant to Ohio Admin. Code 5120-2-03.1(M), the next sentences to be served were the definite prison terms, to be followed by the life sentence for aggravated murder. The trial court's 2000 termination entry did not specify whether Ford was to serve the definite ten-year term for aggravated robbery before the definite one-year term for having weapons while under disability or vice versa. It is clear, however, that Ford completed one, but not both, of those sentences before the trial court filed its May 20, 2013 amended termination entry to correct a post-release control problem.

**{¶ 20}** As of October 11, 2001, Ford was entitled to 283 days of jail-time credit. He also had served 386 days in prison.[4] By that date, then, he had served approximately one year and ten months of his sentence. From October 11, 2001 until May 20, 2013, he served a little more than

---

[4] October 11, 2001 is the date of the trial court's first resentencing entry after this court's remand for findings to support maximum, consecutive sentences. In that resentencing entry, the trial court noted that Ford had 283 days of jail-time credit and had served 386 days in prison. (Doc. #7).

another eleven years and seven months. Thus, his total time served when the trial court resentenced him on May 20, 2013 was roughly thirteen years and five months. Three of those years were served for the firearm specification, leaving about ten years and five months served. As a result, Ford either had completed his ten-year aggravated robbery sentence or his one-year weapons-under-disability sentence, but not both, before the trial court resentenced him on May 20, 2013.[5] In *State v. Kish*, 8th Dist. Cuyahoga No. 99895, 2014-Ohio-699, the Eighth District recognized a general absence of authority dictating which sentence a defendant serves first when he receives consecutive prison terms on multiple counts.[6] The *Kish* court concluded that it was a matter for a trial court to address in its sentencing entry.

{¶ 21} For purposes of sentencing, the trial court's original 2000 termination entry referred to Ford's aggravated-robbery conviction before his weapons-under-disability conviction. In the absence of any other guidance, we reasonably might infer that the trial court intended Ford to serve his aggravated-robbery sentence first. This approach is consistent with another Eighth District case addressing the same problem. In *State v. Cvijetinovic*, 8th Dist. Cuyahoga No.

---

[5]We note that the Ohio Department of Rehabilitation and Corrections' (ODRC) web site suggests a different result. It indicates that Ford's eleven-year prison term for his aggravated robbery and weapons-under disability convictions will expire on August 21, 2014. *(See* http://www.drc.ohio.gov/OffenderSearch/details.aspx?id=A400523). Counting backward from that date, and assuming that Ford served his ten-year aggravated-robbery sentence first, means that he began his one-year weapons-under-disability sentence on August 21, 2013. The trial court resentenced Ford to correct the community control problem, however, on May 20, 2013, *before* he would have started serving his weapons-under-disability sentence. This suggests that he still would have been serving the last few months of his ten-year aggravated-robbery sentence on May 20, 2013. We are unpersuaded by this computation for one reason: our review of the record and the ODRC web site suggests to us that the ODRC's calculation fails to give Ford credit for the 283 days of jail time the trial court awarded him. If these days are included, it is clear to us that Ford in fact had completed his ten-year aggravated-robbery sentence before May 20, 2013.

[6]Authority does exist dictating that the sentence for a firearm specification is served first and that a life sentence is served last. *See* Ohio Admin. Code 5120-2-03.1(M) We have found no authority, however, absent trial court specification, establishing the sequence in which other consecutive felony sentences, such as those at issue here, are to be served.

99316, 2013-Ohio-5121, the court found itself unable to determine which of multiple sentences a defendant was intended to serve first. Under such circumstances, the *Cvijetinovic* court reasoned that it was required to construe the ambiguity in the defendant's favor. *Id.* at ¶ 24-25. Doing so here results in a finding that Ford served his aggravated-robbery sentence first and completed it before the trial court resentenced him on May 20, 2013. This is so because post-release control for the aggravated-robbery conviction is mandatory for five years, whereas post-release control for the weapons-under-disability offense is discretionary for three years. It is to Ford's advantage then for us to conclude, as we do, that he served his aggravated-robbery sentence first. Because he had completed that sentence, based on *Holdcroft*, *supra*, the trial court lacked authority to impose post-release control for the aggravated robbery. Accordingly, we will sustain Ford's second assignment of error, in part, reverse the trial court's judgment, and remand the cause with instructions to vacate post-release control for his aggravated-robbery conviction. *Id.* at ¶ 19.

{¶ 22} The only remaining issue in Ford's second assignment of error concerns merger of allied offenses. He contends he was entitled to a de novo hearing to raise this issue. He is wrong. As we have explained, he was not entitled to a de novo hearing. In addition, his allied-offense claim is barred by res judicata. If Ford believed he was entitled to merger of offenses, he could have raised the issue in his original direct appeal, which this court decided in 2001. Ford's recent resentencing to correct a post-release control problem did not allow him to raise an allied-offense argument during the May 15, 2013 hearing. *See*, *e.g.*, *State v. Jackson*, 12th Dist. Butler No. CA2011-08-154, 2012-Ohio-993, ¶ 8-10; *State v. Buckner*, 1st Dist. Hamilton No. C-100666, 2011-Ohio-4358, ¶ 7.

{¶ 23} Based on the reasoning set forth above, Ford's first assignment of error is

overruled. His second assignment of error is sustained in part and overruled in part. It is sustained insofar as the trial court erred in imposing post-release control for Ford's aggravated-robbery offense. It is overruled in all other respects. The trial court's judgment is reversed and the cause is remanded for the sole purpose of vacating post-release control for the aggravated-robbery conviction.

. . . . . . . . . . . . .

FAIN, J., concurs.

DONOVAN, J., concurring in part and dissenting in part:

{¶ 24}  I disagree with the majority's resolution of the first assignment of error.  In my view, the analysis in *Peace* is persuasive authority.  Ford should have been afforded counsel at his re-sentencing because it is a critical stage, necessitating a hearing and the exercise of a judicial act which required not just the imposition of the mandatory post-release control, but notice of the consequences of a potential violation.  If such notice is not given, the Adult Parole Authority has no jurisdiction to supervise or return a defendant to prison.  As noted in *Peace*, post-release control has significant consequences, and Ford's due process and constitutional rights dictate he have the guiding hand of counsel to guarantee that he understands the significance of post-release control supervision and potential violations thereof.  Furthermore, counsel ensures that the re-sentencing is, in fact, limited to imposition of post-release control, and ensures appellate rights are given.   Counsel is absolutely necessary in my view.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck

Carley J. Ingram
Damien D. Ford
Hon. Michael Tucker