[Cite as *State v. Morris*, 2020-Ohio-704.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                      Court of Appeals No. L-18-1187

      Appellee                                   Trial Court No. CR0201703167

v.

Richard Morris                                     **DECISION AND JUDGMENT**

      Appellant                                  Decided:    February 28, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Eric Allen Marks, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas which found appellant guilty of two counts of felonious assault with specifications.

For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} On December 14, 2017, a Lucas County Grand Jury indicted defendant-appellant, Richard Morris, with four charges in a six-count indictment arising from an officer-involved shooting on December 6, 2017, in Toledo, Lucas County, Ohio. The second and fourth counts concerned co-defendants who are not parties to this appeal.

{¶ 3} The first count was for felonious assault against a peace officer with a deadly weapon, a violation of R.C. 2903.11(A)(2) and (D), a first degree felony, with the specification appellant displayed, brandished, indicated possession of or used a firearm pursuant to R.C. 2941.145(A),(B),(C), and (F), and with the additional specification appellant discharged a firearm from a motor vehicle pursuant to R.C. 2941.146(A),(B), and (D). The third count was for felonious assault against a second peace officer with a deadly weapon, a violation of R.C. 2903.11(A)(2) and (D), a first degree felony, with the specification appellant displayed, brandished, indicated possession of or used a firearm pursuant to R.C. 2941.145(A),(B),(C), and (F). The fifth county was for improperly handling firearms in a motor vehicle, a violation of R.C. 2923.16(B), a fourth degree felony. The sixth count was for having weapons while under disability, a violation of R.C. 2923.13(A)(3), a third degree felony.

{¶ 4} Appellee alleged that on December 6, 2017, appellant and the co-defendants were observed by Toledo police to enter a vehicle "suspected of being involved in a shooting incident earlier that day." On December 6, 2017, appellant was on community control for an unrelated 2016 criminal conviction. When the vehicle stopped at a carryout, two policemen attempted to surround the vehicle from different directions, and

2.

shots were fired from the vehicle at them. Appellant fled the vehicle, and a foot chase ensued by one of the policemen. Appellant raised his gun towards the chasing policeman, who responded by shooting appellant "above the left buttock area" and apprehended him.

{¶ 5} Appellant originally pled not guilty to all of the charges, and after a series of pretrials and discovery exchanges, on July 19, 2018, he chose to withdraw his earlier not guilty pleas and enter guilty pleas pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) to lesser included offenses that deleted the references to the victims as police officers and the firearms specification in one count. He pled to the first count for felonious assault with a deadly weapon, a violation of R.C. 2903.11(A)(2) and (D)(1)(a), a second degree felony, with the specification appellant displayed, brandished, indicated possession of or used a firearm pursuant to R.C. 2941.145. He also pled to the third count, sometimes referred to the "second" count for plea and sentencing purposes, for felonious assault with a deadly weapon, a violation of R.C. 2903.11(A)(2) and (D)(1)(a), a second degree felony, where appellee dismissed the specification for this count. As a result of the plea agreement, appellee then asserted nolle prosequi on the fifth and sixth counts and the additional specifications that were attached to the first and third counts. By order journalized on July 23, 2018, the trial court accepted the *Alford* pleas and found appellant guilty of the plea agreement offenses.

{¶ 6} Appellant then filed a sentencing memorandum requesting leniency at the upcoming sentencing hearing. The sentencing hearing was held on August 6, 2018, and

3.

the hearing transcript is in the record. The trial court sentenced appellant to serve eight years in prison plus an additional mandatory, consecutive three years pursuant to R.C. 2929.14(C)(1)(a) for the first count. The trial court further sentenced appellant to serve eight years in prison for the second count, to run consecutively with the first sentence pursuant to R.C. 2929.11 and 2929.14(C)(4). The trial court's nunc pro tunc sentencing judgment entry was journalized on August 13, 2018.

{¶ 7} Appellant timely filed his appeal setting forth two assignments of error:

FIRST ASSIGNMENT OF ERROR: The trial court erred in finding appellant guilty of felonious assault where the factual basis was legally insufficient, in light of the defendant's protestation of innocence, in violation of the due process guarantees of the Fifth Amendment and Fourteenth Amendment of the United States Constitution and Article I, Section 16, of the Ohio Constitution..

SECOND ASSIGNMENT OF ERROR: The trial court erred by considering an improper sentencing factor when imposing a maximum sentence.

{¶ 8} In support of his first assignment of error, appellant argued the trial court erred by accepting his *Alford* guilty pleas where there was insufficient evidence because he maintained his innocence. Appellant argued the trial court failed to inquire and determine that he made a rational calculation to plead guilty despite his belief in his innocence. He argued the trial court failed to inquire of his reasons for deciding to plead

4.

guilty and of the state's evidence to determine that the likelihood of convictions of the offenses of equal or greater magnitude to what he pled was great enough to warrant an intelligent decision to plead guilty. Appellant argued the only evidence solicited by the trial court was that he "raise[d] a weapon towards Sgt. Poole as he was running away from the scene. He did not try to pull the trigger and he did not make any verbal threats to the officers in conjunction with raising the gun. There is no overt act committed by Appellant and directed towards Sgt. Poole." Appellant further argued that as a result of the trial court's failure to conduct a detailed Crim.R. 11 colloquy, the trial court lacked the necessary factual basis upon which to accept his *Alford* pleas.

{¶ 9} In response, appellee argued the trial court did not err when it accepted appellant's *Alford* plea. Appellee there was sufficient evidence for then finding appellant guilty of both felonious assault offenses.

{¶ 10} A guilty plea is a complete admission of guilt: an admission of committing the crime charged against the defendant and consent to entry of judgment without a trial. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 14. Unless the defendant asserts his actual innocence when entering a plea of guilty, the defendant "is presumed to understand that he has completely admitted his guilt." *Id.* at ¶ 19.

{¶ 11} In contrast, in an "'*Alford* plea' * * * a defendant pleads guilty yet maintains actual innocence of the charges." *Id.* at ¶ 13, citing *Alford*, *infra*. The standard of validity of an *Alford* plea is "a criminal defendant may enter a guilty plea while maintaining his innocence provided that the plea is entered voluntarily, knowingly, and

5.

intelligently and that some factual basis exists to support the allegations in the indictment." *In re Kirby*, 101 Ohio St.3d 312, 2004-Ohio-970, 804 N.E.2d 476, ¶ 15.  A defendant does not have an absolute constitutional right to enter an *Alford* plea.  *Id.* at ¶ 19.

{¶ 12} "'Before accepting an *Alford* plea, the trial court must * * * require the state to show a basic factual framework for the charge and plea.'" (Citation omitted.) *State v. Woods*, 6th Dist. Lucas No. L-13-1181, 2014-Ohio-3960, ¶ 6.  The trial court may rely on the entire record to determine that basic factual framework.  *State v. Dyer*, 6th Dist. Lucas No. L-17-1258, 2019-Ohio-1558, ¶ 10.

The Ohio Supreme Court has outlined the analysis required to determine whether an *Alford* plea has been voluntarily and intelligently made: "[W]here the record affirmatively discloses that: (1) a guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) his advice was competent in light of the circumstances surrounding the plea; (4) the plea was made with the understanding of the nature of the charges; and, (5) the plea was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made."

*Woods* at ¶ 7, quoting *State v. Piacella*, 27 Ohio St.2d 92, 96, 271 N.E.2d 852 (1971).

6.

{¶ 13} The record shows at the July 19, 2018 plea hearing the trial court received evidence of the scope of the plea agreement between the parties. The trial court inquired from appellant, among other matters, his understanding of the consequences of the withdrawal of a pending motion to suppress and of "the rights you're giving up by entering the plea today" and of the range of potential penalties if found guilty of the offenses pled. The trial court continued its colloquy with appellant.

Court: Now you're entering a guilty plea pursuant to a case known as North Carolina versus Alford. It's a unique type of guilty plea. It's one in which you're saying, judge, I'm pleading guilty but I deny I did anything wrong, and I wish to plead guilty to avoid the risk of going to trial on more serious charges, and being sentenced on those more serious charges, okay? The law allows you to do that. And what you need to understand is that if I accept this Alford plea from you, you will be found guilty of the charges and sentenced as if you are, in fact, guilty of those charges. There's no lessor (sic.) penalty because you haven't pled guilty. Do you understand that?

A: I understand.

Court: Do you also understand most importantly that by entering these pleas today you're waiving your right to a trial?

A: Correct.

* * *

Court:  As you stand before me are you satisfied with the opportunities you had to discuss this case with your attorney, Mr. Riley?

A:  I am, judge.

Court:  Are you satisfied with his advice in this matter?

A:  I am.

Court: Do you believe it's in your best interest to enter in this plea agreement?

A:  I do.

Court:  Has anyone threatened you in any way to get you to enter this plea?

A:  Not at all.

Court:  The promises that I have been made aware of and there are a number of them are as follows, I think you already heard them, but let's clarify that.  You heard the state ask this court to amend both Count 1 and 3 from a first degree felony to a second degree felony.  That's one promise. In exchange for you entering pleas to those two amended counts as well as the 3-year gun specification attached to the first count, the state is also recommending that at time of sentence the remaining 5-year gun specifications and the 3-year gun specification attached to Count 3 will be dismissed as well as Counts 5 and 6, correct?

A:  Correct.

Court:  Any other promises made to you by anyone else to get you to enter this plea?

A:  No.

Court:  Have you reviewed this plea form?

A:  Yes.

Court:  Any questions about what this document says?

A:  No.

* * *

Court:  Record will reflect this defendant has in open court this date reviewed and then signed this plea agreement, his signature having been obtained in open court, has been witnesses by his attorney, as well as the assigned assistant county prosecutor to whom I look for recitation of facts.

Mr. Herr:  Thank you, Your Honor.  May it please the court, had this case proceeded to trial the State of Ohio intended to produce evidence to prove beyond a reasonable doubt that on or about the 6th day of December, of 2017, in Lucas County, Ohio, this defendant * * * [with two other co-defendants] were involved in a shootout with members of the Toledo Police division.

Judge, there was a shooting incident that happened earlier that day in the City of Toledo was well as some ongoing problems that caused members of the special intelligence group from the Toledo Police division

to conduct surveillance at a hotel known as the Sleep Inn in Oregon, Lucas County, Ohio. There were several vehicles the police were watching, one of which was believed to be involved in the earlier shootout that day. As the surveillance was ongoing and as the police were intent on getting a search warrant for that hotel and that hotel room, * * * this defendant, Richard Morris, entered a tan Chevy Trailblazer and left from that parking area.

The police continued their surveillance on the move. * * * [T]he defendants pulled into a parking area in front of a carryout, the Monroe Carryout itself.

The police, knowing the dangers involved, set up and intended to do something called a vehicle containment technique. They were going to block the car in once it started to move again. And that's what happened. After the car started to back from the parking lot, members of the special intelligence group came in front different directions and blocked that * * * tan Chevy Trailblazer in its place and almost immediately shots rang out.

　　* * *

So as the police blocked in this tan Chevy Trailblazer another shot came from the rear seat, and that was where Richard Morris was seated at the time. There's a perforation from the inside of the driver side window

that traveled out of that car. So he shot one round right past the driver's head essentially * * *.

Detective Norm Carroll (sic.), as I described earlier, was magnificent in all of this chaos and as he moved from the cover of his vehicle while being shot at, he managed to shoot through the gap going towards the cover of his door and strike [a co-defendant]. Now at that very same time, this defendant exited the rear seat of the vehicle and was running away when he was encountered by Sergeant Duane Poole, Detective Poole. Detective Poole yelled police, stop. A civilian as well as Detective Poole would indicate that this defendant then raised his pistol as if he was going to try to shoot then Sergeant Poole. Detective Poole fired, hitting the defendant above the left buttock area, and then he dropped the gun, ran off a short distance, and was apprehended at the scene.

As it turns out the weapon that was pointed at this detective, through a witness, her name was Kiera Johnson, described as looking like he was trying to shoot the officer, was found to have been jammed. The earlier shot that was fired, the spent shell casing did not eject properly, so it made it impossible to fire at that point, but he (sic.) could have easily been ejected, that spent casing, and made operable to fire again.

So this defendant was then taken into custody at the scene. The gun was recovered. The gun involved was test fired by Kevin Belsick of the

Bureau of Criminal Identification, it was found to be operable, Your Honor. And those are the facts the state would have presented at trial.

* * *

Court: So Mr. Morris, do you have any questions of me as it relates to this plea?

A: No, sir.

Court: Do you want me to accept this plea you now entered into?

A: Yes, I would.

Court: And you're entering this plea as your own free will?

A: Yes.

Court: Court accepts the plea agreement. * * *.

{¶ 14} We find appellant's guilty pleas were voluntarily and intelligently made. We further find the record affirmatively discloses that: (1) appellant's guilty pleas were not the result of coercion, deception or intimidation; (2) counsel was present at the time of appellant's pleas; (3) counsel's advice was competent in light of the circumstances surrounding the pleas; (4) the pleas were made with the understanding of the nature of the charges; and, (5) the pleas were motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both. Given the dialogue between appellant and the trial court, his voluntary execution of the plea form, the explanations of the amended, lesser charges, and the state's summary of the evidence it would have presented at trial, we find that the trial court properly determined appellant's reasons for

12.

entering the *Alford* pleas and ascertained that he had made a rational calculation that it was in his best interest to do so. *State v. Hopings*, 6th Dist. Lucas No. L-18-1038, 2019-Ohio-1486, ¶ 14.

{¶ 15} The record shows that at no time did appellant raise with the trial court any concerns about the validity of his *Alford* pleas. This court has previously stated that where appellant failed to raise the validity of his plea to the trial court prior to being sentenced, the appellant waived the issue on appeal except for plain error. *State v. Little*, 6th Dist. Lucas No. L-17-1008, 2018-Ohio-2864, ¶ 10. "Plain error does not exist unless it can be said that but for the error, the outcome below would clearly have been otherwise." *State v. Jells*, 53 Ohio St.3d 22, 24, 559 N.E.2d 464 (1990). We reviewed the entire record and find no actual and obvious plain error from which the trial court clearly would not have accepted his *Alford* pleas and convict him of the two felonious assault offenses.

{¶ 16} Although, appellant argued there was insufficient evidence with which the trial court could find him guilty of the two amended felonious assault offenses because the victims' status as peace officers was removed from each charge, we find he waived this argument with his valid *Alford* plea in which he waived his right to require appellee to prove his guilt beyond a reasonable doubt. *State v. Battigaglia*, 6th Dist. Ottawa No. OT-09-009, 2010-Ohio-802, ¶ 20.

{¶ 17} Appellant's first assignment of error is not well-taken.

13.

{¶ 18} In support of his second assignment of error, appellant argued the trial court erred when it improperly imposed the maximum sentences. Appellant argued the trial court improperly considered the victims as police officers, factors which were specifically deleted as a result of his plea agreement. "The trial court impermissibly used the element from the original charges, the victim's (sic.) status as police officers, to enhance Appellant's sentence to a maximum, consecutive sentence * * *."

{¶ 19} In response, appellee argued the trial court did not err because the victims' status as police officers was not an element of each felonious assault offense. Appellee further argued the record supported imposing the maximum sentences because appellant was likely to commit future crimes: (1) appellant committed these new felonies while on community control in another matter, (2) appellant "had stopped reporting for that community control in March and that a capias had been issued for his arrest after he failed to appear in May," (3) appellant's lack of credibility insisting he was only in the wrong place at the time he shot at the victims, and (4) appellant's lack of remorse for the offenses.

{¶ 20} We review a contrary-to-law challenge to a trial court's felony sentencing determination for clear and convincing evidence in the record. R.C. 2953.08(G)(2)(b). If we find clear and convincing evidence the record does not support the sentence, we may increase, reduce, modify or vacate the felony sentence. *State v. Carnicom*, 6th Dist. Wood No. WD-15-077, 2016-Ohio-7290, ¶ 10-11. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm

14.

belief or conviction as to the allegations sought to be established. * * * It does not mean clear and *unequivocal*." (Emphasis sic.) *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 21} Appellant was sentenced to a total of 19 years in prison. As stated in the August 13, 2018 journalized sentencing judgment entry, the trial court sentenced appellant to serve eight years in prison plus an additional mandatory, consecutive three years pursuant to R.C. 2929.14(C)(1)(a) for the first count.

{¶ 22} For a felony in the second degree committed prior to March 22, 2019, the trial court could impose a prison term within the range from two to eight years. R.C. 2929.14(A)(2)(b); *State v. Salman*, 6th Dist. Lucas No. L-17-1223, 2018-Ohio-3516, ¶ 4. The trial court had full discretion to impose the maximum sentence with no obligation to make any special findings. *State v. Grace*, 6th Dist. Sandusky No. S-18-044, 2019-Ohio-3812, ¶ 25. The trial court ordered appellant to serve eight years for the first count, which was within the range, and the maximum sentence was not dependent on the victim's status as a peace officer.

{¶ 23} For the specification that appellant displayed, brandished, indicated possession of or used a firearm pursuant to R.C. 2941.145(A),(B),(C), and (F), it required the imposition of a three-year mandatory prison term pursuant to R.C. 2929.14(B)(1)(a)(ii). The mandatory prison term was also not dependent on the victim's status as a peace officer. The three-year mandatory prison term must be served

15.

"consecutively to and prior to any prison term imposed for the underlying felony * * *."
R.C. 2929.14(C)(1)(a).

{¶ 24} As further stated in the August 13, 2018 journalized sentencing judgment entry, the trial court sentenced appellant to serve a consecutive eight years in prison for the third count. The court's findings were not dependent on the victims' status as police officers. Rather, the trial court found "the defendant was on community control, the harm caused was great or unusual such that no single prison term is adequate, and the defendant's criminal history demonstrates that consecutive sentences are necessary to protect the public, therefore the sentences are ordered to be served consecutively."

{¶ 25} According to the August 6, 2018 sentencing hearing transcript in the record, one victim testified, "On December 6th, 2017, Richard Morris fired one round at me and thankfully it missed. * * * The round missed, and his gun jammed. Thankfully it jammed since I was already in a gun battle with the front seat passenger. The outcome could have been a lot worse had his gun not jammed."

{¶ 26} During appellant's statement at the sentencing hearing, he admitted to shooting at somebody. "Fearing for my own safety, yes, sir, I did blindly like (sic.) shoot out of the closed driver's side window hoping that like (sic.) to stop whoever was shooting into the vehicle from continuing to do so long enough for me to get out of the vehicle."

16.

**{¶ 27}** At the conclusion of appellant's lengthy statement, the trial court then directly addressed appellant about his pattern of criminal behavior and concerns for violating his community control sanction from a prior conviction.

Court: Where to begin with you. Let's begin with you at the beginning, meaning the prior case. Do you even remember what you said to me when you stood in front of me on that other case at the time that I said we'll give you an opportunity on community control and I placed you on community control? Do you remember what you said about that case?

A: Absolutely.

Court: Do you see the pattern with what you said there verses what you said here?

A: Yes.

Court: And that pattern is once again I'm in the wrong place at the wrong time.

A: Yes, sir.

Court: I'm in a car with a dude selling drugs that gets stopped by undercover cops. He flees. * * * And I end up pleading to those drug counts because that guy, the driver fled, and I'm just, Judge, I'm sorry, I'm in the wrong place at the wrong time. That's what you said. Placed you on community control. You did fairly well until March of last year when you stopped reporting. * * * Your last physical appearance was in May. * * *

17.

A capias was issued for your arrest. * * * The only reason you're in custody is because of this incident, and the capias that was issued in May was placed upon you upon your arrest as a consequence of this incident. * * * You knew you had a capias for your arrest. You didn't act upon it. So you're out doing whatever you're doing in this community without a care about your obligation to our court and therefore our community on the case for which you've been paced on community control. And then in December of last year you once again find yourself at the wrong place at the wrong time, but this a lot more serious than the drug case.

It is striking to me the cavalierness with which I'll just pick up a gun and start shooting. * * * If you had only known they were police officers, I would have never shot at them. Do you understand how horrible that is? Do you understand what that says? It says, well, if it was just people out there who was (sic.) trying to do me wrong, I'm going to kill them, because if I don't kill them they'll kill me. What does that say about your life, the lifestyle and the people that you're hanging with? * * * What does that say about our community, that that's how you have to live, and therefore, when you get caught in this situation, it's like, oh, I didn't know they were police officers. Holy God. * * * You'll listen to me because I have a gun pointing at you. That's not how civilized societies can and should function.

* * * But you intentionally shot at a person who happened to be a police officer. That's why you're being sent to prison.

{¶ 28} Our review of the record finds clear and convincing evidence supporting appellant's felony sentences for two counts of felonious assault with one firearm specification, and the sentences were not contrary to law. *State v. Davis*, 6th Dist. Lucas No. L-16-1313, 2018-Ohio-2984, ¶ 45-46. We find the trial court considered the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors under R.C. 2929.12, and the sentences were within the statutory ranges. The undisputed fact the victims happened to also be peace officers do not disturb our findings.

{¶ 29} Appellant's second assignment of error is not well-taken.

{¶ 30} On consideration whereof, we find that substantial justice has been done in this matter. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.