**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*State ex rel. Randlett v. Lynch,* **Slip Opinion No. 2022-Ohio-3260.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3260

THE STATE EX REL. RANDLETT, APPELLANT, *v*. LYNCH, JUDGE, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Randlett v. Lynch,* Slip Opinion No. 2022-Ohio-3260.]**

*Criminal law—Mandamus—Postrelease control—Crim.R. 36 allows a trial court to correct a sentencing entry to reflect that court properly imposed postrelease control at sentencing hearing—A proper nunc pro tunc entry is not a collateral attack on the judgment it corrects—Appellant lacks clear legal right to relief—Court of appeals' denial of writ affirmed.*

(No. 2021-0310—Submitted July 12, 2022—Decided September 20, 2022.)

APPEAL from the Court of Appeals for Franklin County, No. 20AP-489, 2021-Ohio-221.

_____

**Per Curiam.**

{¶ 1} In 2003, appellant, Larry A. Randlett, was sentenced on more than 60 felony counts involving crimes he committed from 1994 to 2000. In October 2020—about a month before Randlett was to be released from prison—appellee, Judge Julie M. Lynch, issued nunc pro tunc entries correcting some of Randlett's sentencing entries to include references to the imposition of a mandatory five-year term of postrelease control. Thereafter, Randlett filed an original action in the Tenth District Court of Appeals seeking a writ of mandamus to compel Judge Lynch to vacate the nunc pro tunc entries. He argued that he had not been properly sentenced to postrelease control and is not subject to supervision after his release from prison. The court of appeals denied the writ Randlett had requested.

{¶ 2} Randlett has appealed to this court as of right. We affirm.

## Background

{¶ 3} In 2003, Randlett pleaded guilty to numerous offenses in four separate cases. This appeal involves the three cases that included offenses Randlett committed after July 1, 1996, when postrelease control became part of Ohio's sentencing scheme. *See* Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136 ("S.B. 2").

{¶ 4} There is no dispute that because Randlett was convicted of felony sex offenses, he was subject to a mandatory five-year term of postrelease control in each of the three cases. *See* R.C. 2967.28(B)(1); former R.C. 2929.19(B)(3)(c), H.B. No. 170, 149 Ohio Laws, Part IV, 7914, 7963-7964. Before pleading guilty, Randlett signed three plea forms certifying his understanding that he would be sentenced to "Five Years-Mandatory" of postrelease control. During Randlett's plea colloquy, the trial court informed Randlett that he would be "subject to five years [of] mandatory supervision by the Adult Parole Authority of Ohio." And Randlett

concedes that in two of the three cases, the trial court properly imposed a mandatory five-year term of postrelease control at his sentencing hearing.[1]

{¶ 5} This case arises because Randlett's sentencing entries stated only the following about postrelease control:

> After the imposition of sentence, the Court notified the Defendant, orally and in writing, of the applicable periods of post-release control pursuant to R.C. 2929.19(B)(3)(c), (d) and (e).

The entries did not specify all the information necessary "to validly impose postrelease control," *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 1 ("when the court orally provides all the required advisements at the sentencing hearing, the sentencing entry must contain the following information: (1) whether postrelease control is discretionary or mandatory, (2) the duration of the postrelease-control period, and (3) a statement to the effect that the Adult Parole Authority ('APA') will administer the postrelease control pursuant to R.C. 2967.28 and that any violation by the offender of the conditions of postrelease control will subject the offender to the consequences set forth in that statute").

{¶ 6} Randlett appealed certain aspects of his sentence, but neither he nor the state challenged the trial court's imposition of postrelease control. *See State v. Randlett*, 10th Dist. Franklin Nos. 03AP-385 through 03AP-388, 2003-Ohio-6934, ¶ 20.

---

1. The parties agree that the trial court erroneously stated at the sentencing hearing that postrelease control was "optional" for Randlett's fourth-degree and fifth-degree felony offenses. In light of this error, the trial court failed to properly impose postrelease control in one of the three cases at issue. But the trial court did properly impose a mandatory five-year term of postrelease control in the other two cases at issue, because they included third-degree felony offenses. Because multiple periods of postrelease control must be served concurrently, the trial court's error at the sentencing hearing has no impact on the issues presented in this appeal. *See Durain v. Sheldon*, 122 Ohio St.3d 582, 2009-Ohio-4082, 913 N.E.2d 442, ¶ 1.

**{¶ 7}** In August 2020, the Ohio Parole Board's chief hearing officer sent a letter to the Franklin County prosecuting attorney indicating that Randlett was scheduled to be released in November 2020 and that Randlett's sentencing entries did not include "sufficient notification regarding post-release control." The letter stated that the APA would need corrected entries "that impos[e] post-release control, and includ[e] the prescribed duration in R.C. 2967.28" before it could place Randlett on postrelease control. Two weeks later, the state filed a motion asking the trial court to issue nunc pro tunc entries indicating that Randlett is subject to a mandatory five-year term of postrelease control.

**{¶ 8}** In October 2020, the trial court granted the state's motion and issued nunc pro tunc entries in the three cases "to reflect that [Randlett] is subject to a mandatory five-year term of Post Release Control." The nunc pro tunc entries state the following about postrelease control:

> After the imposition of sentence, the Court notified the Defendant, orally and in writing, of [sic, that] the applicable perio[d] of post-release control pursuant to R.C. 2929.19(B)(3)(c), (d), and (e) is **Five (5) years mandatory**.

(Boldface sic.)

**{¶ 9}** Randlett did not appeal the nunc pro tunc entries. Instead, in October 2020, he filed an original action in the court of appeals seeking a writ of mandamus compelling Judge Lynch to vacate the nunc pro tunc entries. He argued that his original sentencing entries did not properly impose postrelease control and that the state should have raised the issue on appeal and is now barred by res judicata from attempting to correct the errors. He also argued that the trial court no longer had subject-matter jurisdiction over the three cases, because he had served his sentences in those cases and at the time was imprisoned only for the fourth case,

4

in which postrelease control was not at issue. The court of appeals held that Randlett had not shown a clear legal right to relief in mandamus and denied the writ.

{¶ 10} Randlett has appealed to this court as of right.

**Analysis**

{¶ 11} To be entitled to a writ of mandamus, Randlett must prove by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of Judge Lynch to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *See State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. Randlett need not satisfy the third requirement if Judge Lynch patently and unambiguously lacked jurisdiction to issue the nunc pro tunc entries. *See State ex rel. Mayer v. Henson*, 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, ¶ 17.

{¶ 12} The court of appeals held that Randlett did not demonstrate a clear legal right to a writ of mandamus, essentially granting summary judgment in Judge Lynch's favor. We review that decision de novo. *See State ex rel. Anderson v. Vermilion*, 134 Ohio St.3d 120, 2012-Ohio-5320, 980 N.E.2d 975, ¶ 8-9.

{¶ 13} We recently addressed issues concerning the imposition of postrelease control in *State v. Bates*, 167 Ohio St.3d 197, 2022-Ohio-475, 190 N.E.3d 610. In *Bates*, the trial court—ten years after sentencing Bates and at the state's request—orally advised Bates about his postrelease-control obligations and issued a new sentencing entry that included the required notifications about postrelease control. *Id*. at ¶ 4-5. Bates appealed, and we held that res judicata precluded the state from raising the sentencing error collaterally rather than on direct appeal. *Id*. at ¶ 24.

{¶ 14} Randlett argues that we should reach a similar conclusion in this case. He contends that the trial court's failure in 2003 to issue *Grimes*-compliant

sentencing entries benefited him and that the state therefore was the party that had to appeal. In fact, he argues that under *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, and *State v. Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, 161 N.E.3d 608, a direct appeal by the state was the *only* way to correct the trial court's error.

**{¶ 15}** But this case differs from *Bates* in an important way. Unlike Bates, Randlett concedes that the trial court gave the statutorily required notice at his 2003 sentencing hearing. *See Bates* at ¶ 27. In *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 24, 30, we held that when a trial court properly notifies a defendant about postrelease control at the sentencing hearing but fails to incorporate those advisements into the sentencing entry, it may correct the omission as a clerical mistake under Crim.R. 36, to reflect the notice that was in fact given at the hearing. *See also State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, 943 N.E.2d 1010, ¶ 14 ("Because [the] appellant was notified of the proper term of postrelease control at his sentencing hearing and the error was merely clerical in nature, [the trial court] was authorized to correct the mistake by nunc pro tunc entry without holding a new sentencing hearing" [footnote omitted]). *Bates* does not undermine *Qualls* or a trial court's authority to correct a sentencing entry under Crim.R. 36 when the trial court has notified the offender of all the required postrelease-control advisements at the sentencing hearing. *See* Crim.R. 36 ("Clerical mistakes in judgments [or] orders * * * may be corrected by the court at any time").

**{¶ 16}** In *Bates*, we concluded that res judicata barred the state from collaterally attacking a sentence and from seeking a *new* sentencing entry imposing postrelease control. *See* 167 Ohio St.3d 197, 2022-Ohio-475, 190 N.E.3d 610 at ¶ 22-25, 32. Here, in contrast, the state did not collaterally attack Randlett's sentence; a proper nunc pro tunc entry is not a collateral attack on the judgment it corrects. *See Qualls* at ¶ 13. In this case, the nunc pro tunc entries merely reflect

the fact that the trial court sentenced Randlett to a mandatory five-year term of postrelease control at his sentencing hearing—a point Randlett himself concedes. Those entries "relat[e] back to the original sentencing entry," *id.* at ¶ 14, and correct the erroneous sentencing entries "so that the record speaks the truth," *id.* at ¶ 13, citing *State v. Lester*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718. We conclude that Crim.R. 36 authorized Judge Lynch to issue corrected sentencing entries that reflect the postrelease-control term the trial court actually imposed.

**{¶ 17}** Randlett argues that the use of a nunc pro tunc entry to correct a deficient sentencing entry is "expressly forbidden" under *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, at ¶ 17, 44. But *Harper* does not prohibit the issuance of such nunc pro tunc entries. In *Harper*, as here, the trial court had provided all the required postrelease-control advisements at the sentencing hearing but issued a sentencing entry that did not fully comply with *Grimes. Harper* at ¶ 8. The trial court denied Harper's motion to vacate the postrelease-control portion of his sentence, and Harper appealed. *Id*. at ¶ 9. The court of appeals held that the trial court had validly (though imperfectly) imposed postrelease control, but it nevertheless remanded the matter so that the trial court could issue a nunc pro tunc entry fixing the *Grimes* deficiency. *Harper* at ¶ 10. We held that res judicata barred Harper from collaterally attacking his sentence and reversed the court of appeals' judgment remanding the case to the trial court for the issuance of a corrective nunc pro tunc entry. *See id*. at ¶ 41, 44.

**{¶ 18}** Randlett argues that our disposition in *Harper* (i.e., not remanding to the trial court) amounts to an express prohibition against the issuance of nunc pro tunc entries to correct deficient sentencing entries. But Randlett fails to understand that the reason we did not require the trial court to issue a nunc pro tunc entry in *Harper* was that doing so was unnecessary. *See id*. at ¶ 41. This mandamus action presents an entirely different situation; Randlett is attacking nunc pro tunc entries that already have been issued. Our conclusion in *Harper* that a nunc pro

tunc entry was *unnecessary* does not support Randlett's argument that the nunc pro tunc entries issued in his cases were *prohibited*.

{¶ 19} Randlett also argues that the nunc pro tunc entries came too late because, according to him, Judge Lynch issued them when he was serving just his pre-S.B. 2 prison sentence (which did not include a postrelease-control sanction). He points to a statement in *Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, at ¶ 24, that a sentencing entry may be corrected through a nunc pro tunc entry "as long as the correction is accomplished prior to the defendant's completion of his prison term." And he relies on *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, paragraph three of the syllabus, in which we held that "[a] trial court does not have the authority to resentence a defendant for the purpose of adding a term of postrelease control as a sanction for a particular offense after the defendant has already served the prison term for that offense."

{¶ 20} Randlett argues that Judge Lynch lacked jurisdiction to correct his sentencing entries in October 2020 because by that time, he already had served his post-S.B. 2 prison sentences. He contends that no statute dictates the order in which he was to serve his sentences, that the trial court did not specify the order, and that we should therefore infer that the trial court intended for him to serve the sentences in the order they were addressed at the sentencing hearing. He adds that any ambiguity must be resolved in his favor.

{¶ 21} Randlett cites several court-of-appeals cases in support of his argument, but none involved a defendant who was serving both pre-S.B. 2 and post-S.B. 2 sentences. *See State v. Powell*, 2d Dist. Montgomery No. 24433, 2014-Ohio-3842, ¶ 28; *State v. Ford*, 2d Dist. Montgomery No. 25796, 2014-Ohio-1859, ¶ 21; *State v. Collins*, 2d Dist. Montgomery No. 27939, 2018-Ohio-4760, ¶ 20; *State v. Beverly*, 2d Dist. Clark No. 2015-CA-71, 2018-Ohio-2116, ¶ 10; *State v. Cvijetinovic*, 8th Dist. Cuyahoga No. 99316, 2013-Ohio-5121, ¶ 22-26; *State v. Broughton*, 6th Dist. Lucas Nos. L-06-1213 and L-06-1214, 2007-Ohio-5312, ¶ 14.

In opposing Randlett's argument, Judge Lynch cites Ohio Adm.Code 5120-2-03.2(E), which at the time of Randlett's sentencing provided: "When a prison term for a crime committed on or after July 1, 1996, is imposed to run consecutively to a sentence for a crime committed before July 1, 1996, the sentence shall be served first, then the prison term." 1997-1998 Ohio Monthly Record 9-2473.[2] Under this rule, Randlett served his pre-S.B. 2 sentence first and was finishing his post-S.B. 2 prison term when Judge Lynch issued the nunc pro tunc entries in October 2020.[3] Randlett fails to address Ohio Adm.Code 5120-2-03.2(E). Based on the clear language of the rule, Randlett's argument that the trial court lacked jurisdiction to issue the nunc pro tunc entries lacks merit.

{¶ 22} We conclude that Randlett does not have a clear legal right to relief in mandamus, because Judge Lynch properly corrected his sentencing entries under Crim.R. 36 to reflect the fact that the trial court had imposed a mandatory five-year term of postrelease control at his sentencing hearing.

Judgment affirmed.

O'CONNOR, C.J., and FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY and DEWINE, JJ., concur in judgment only.

_____

The Tyack Law Firm Co., L.P.A., Jonathan T. Tyack, and Holly B. Cline, for appellant.

___

2. Under former Ohio Adm.Code 5120-2-03.2(A), "prison term" means "prison terms for offenses committed on or after July 1, 1996," and "sentence" means "prison terms imposed for offenses committed before July 1, 1996."

3. Under former R.C. 2929.14(E)(5), Randlett's post-S.B. 2 sentences were aggregated, so there is no need to determine which post-S.B. 2 sentence he was serving in October 2020. H.B. No. 327, 149 Ohio Laws, Part IV, 7529, 7572-7574; *see also* former R.C. 2929.01(GG), H.B. No. 327, Ohio Laws, Part IV, at 7556 (" 'Stated prison term' means the prison term, mandatory prison term, or combination of all prison terms and mandatory prison terms imposed by the sentencing court pursuant to section 2929.14 or 2971.03 of the Revised Code").

Jeanine A. Hummer and Seth L. Gilbert, Franklin County Assistant Prosecuting Attorneys, for appellee.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Zachery P. Keller, Deputy Solicitor General, urging affirmance for amicus curiae, Ohio Attorney General.

_____