[Cite as *State v. Lofton*, 2023-Ohio-2796.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                        Court of Appeals No.  L-22-1111

    Appellee                                      Trial Court No.  CR0202101525

v.

Nevaeh Lofton                                  **DECISION AND JUDGMENT**

    Appellant                                      Decided:  August 11, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an appeal from the judgment by the Lucas County Court of Common

Pleas, which sentenced appellant, Neveah Lofton, to an indefinite prison term of four to

six years for felonious assault after the trial court accepted appellant's *Alford* guilty plea

and convicted her of that offense.  For the reasons set forth below, this court affirms, in

part, and reverses, in part, the judgment of the trial court.

## I. Background

{¶ 2} The following undisputed facts are relevant to this appeal. On April 13, 2021, the Lucas County Grand Jury indicted appellant on one count of felonious assault, in violation of R.C. 2903.11(A)(1) and (D), a felony in the second degree. R.C. 2903.11(A)(1) states, "No person shall knowingly * * * (1) cause serious physical harm to another[.]" The Lucas County Grand Jury also indicted appellant on one count of felonious assault, in violation of R.C. 2903.11(A)(2) and (D), a felony in the second degree. R.C. 2903.11(A)(2) states, "No person shall knowingly * * * (2) cause or attempt to cause physical harm to another * * * by means of a deadly weapon[.]" Appellee, state of Ohio, gave the factual basis for the charges: that on or about January 10, 2021, in Toledo, Lucas County, Ohio, appellant drove her car, a red Ford Fusion, into the victim and pinned the victim against a building, instantly breaking one leg. The victim was hospitalized with serious injuries and has undergone numerous surgeries.

{¶ 3} Appellant entered not-guilty pleas, and the matter proceeded to trial. On the morning of trial, on February 15, 2022, appellant changed her plea to guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to one count of felonious assault, in violation of R.C. 2903.11(A)(1) and (D), a felony in the second degree. In the plea agreement, appellee dismissed the second count of felonious assault with a deadly weapon, recommended a four-to-six-year sentence, and recommended a no-contact order with the victim. After an extensive plea colloquy, the trial court

2.

accepted appellant's plea and found her guilty of the offense. Later, the trial court sentenced appellant to serve an indefinite prison term of four to six years. At sentencing, the trial court summarized the evidence against appellant and her criminal history.

> Court: Ms. Lofton, it was clear from the video footage that the police obtained from the nearby business that you intentionally ran down the victim. As she was running down the alley[;] you struck her, pinning her to the building. It goes without saying that you caused her serious physical harm, as well as psychological harm. There was a severe laceration that she suffered to her leg, and bone was protruding from that wound, which resulted in several surgeries. Despite the video footage, you claim you had nothing to do with this. You are 20 years old and you have three felony convictions as a juvenile, and you're wanted in Monroe, Michigan on outstanding warrants for domestic violence and two assault offenses.

**{¶ 4}** Appellant timely appealed the trial court judgment setting forth one assignment of error: "Neveah Lofton was denied effective assistance of counsel under the Ohio and United States Constitutions when her lawyer, who was later permitted to resign from the practice of law with disciplinary proceedings pending, was completely unprepared for trial and entered an *Alford* guilty plea with the jury already empaneled."

3.

## II. Ineffective Assistance of Counsel

{¶ 5} In support of her sole assignment of error, appellant argues that her trial counsel, Frank Simmons, was ineffective for two reasons: failing to request a competency evaluation when she has no memory of the offence and demonstrating his ignorance by equating her lack of competency with recalcitrance on the issue of guilt, not her failure to remember. Appellant argues the trial court erred by accepting her *Alford* guilty plea to felonious assault, and by finding her guilty, when her mental health issues "were before the court": that she had an unmedicated bipolar disorder at the time of the plea. Appellant further argues her trial counsel was ineffective because since filing the notice of appeal on May 11, he resigned from the practice of law in Ohio with discipline pending. Appellant concludes that her trial counsel's failure to investigate her competency prior to offering her *Alford* guilty plea should be reversed on plain error, after employing a more nuanced analysis than usually followed in *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984).

{¶ 6} Appellee responds that appellant does not meet her burden to show her trial counsel was ineffective at the time of her *Alford* guilty plea for a number of reasons. First, the thorough plea colloquy by the trial court established appellant was a currently-pregnant, 20-year-old mother of two infants who did not complete the 12th grade, but understood the proceedings and was satisfied with the amount of time she had with her trial counsel and with his advice. Second, at sentencing, appellant's trial counsel raised

4.

the issues of her bipolar and ADHD diagnoses since her youth because he reviewed her presentence investigation report with her. Third, appellant's incompetency claim is traceable to her failure to take the necessary medications to maintain her mental health at the time of the offense because of her succession of pregnancies. Nevertheless, appellant confirmed that she has continuously received mental health counseling for her issues. Fourth, her trial counsel recommended the plea deal because, although she maintained her innocence, "she was closely knitted to this case," and the presentence investigation report included "significant statements" by her: the actual car involved was hers; the car was at one point under her control; the car is "part of the reason why the victim was injured"; and "instead of being convicted by a jury and, possibly, sentenced to the high end," i.e., the maximum minimum of eight years to maximum of 12 years if the convictions were merged at sentencing, the plea agreement recommended four-to-six years, and appellant retained opportunities for probation and access to mental health care. Fifth, her trial counsel offered mitigation at sentencing that the trial court could "probably help her, help the community, help her children, help her family" with a sentence that provides her access to the mental health care she needs, such as receiving the medications during incarceration, access to probation, or diversion to a correctional treatment facility. Finally, appellant's trial counsel was fully licensed during the entire time he represented appellant, so it is irrelevant that he later resigned from the practice of law.

5.

## A. Presumption of Licensed Attorney's Competence

{¶ 7} An ineffective assistance of counsel claim must overcome the strong presumption that a properly licensed Ohio lawyer is competent. *State v. Hamblin*, 37 Ohio St.3d 153, 155-56, 524 N.E.2d 476 (1988). Appellant repeatedly argues that her trial counsel should be presumed ineffective because, during the course of this appeal, he resigned from the practice of law with discipline pending. Appellant does not identify how the resignation is relevant to, or arose out of, her February 15, 2022 *Alford* guilty plea, and she did not question the licensure of her trial counsel at any time during the trial court proceedings. The final act by her trial counsel in the record is the filing of the notice of appeal to preserve her rights. App.R. 4(A)(1). We find the issue of her trial counsel's resignation from the practice of law is not in the record of this appeal. App.R. 9(A)(1). By appellant's own admission, her trial counsel was licensed to practice law in Ohio at the time she offered her *Alford* guilty plea, and his competence is presumed.

{¶ 8} To overcome her trial counsel's presumption of competence, appellant has the burden to show both: (1) deficient performance by her trial counsel below an objective standard of reasonable representation, and (2) a reasonable probability of prejudice that but-for her trial counsel's errors, the outcome would have been different, i.e., that she would not have offered an *Alford* guilty plea to one count of felonious assault and, instead, proceed to trial. *Hamblin* at 156, citing *Strickland* at 687. "A reasonable probability is a probability sufficient to undermine confidence in the

6.

outcome." *Strickland* at 694. If appellant fails to meet either prong of the *Strickland* test, it is not necessary for us to engage in an analysis of the other prong. *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), citing *Strickland* at 697.

### B. Deficient Performance

**{¶ 9}** For the first *Strickland* prong, appellate scrutiny of trial counsel's performance is highly deferential. *Id.* at 142, citing *Strickland* at 689. "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State ex rel. Mango v. Ohio Dept. of Rehab. & Correction*, 169 Ohio St.3d 32, 2022-Ohio-1559, 201 N.E.3d 846, ¶ 24, quoting *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

**{¶ 10}** Appellant argues her trial counsel was not prepared for trial, which is why he improperly advised her to offer her the *Alford* guilty plea. But a review of the February 15, 2022 change-of-plea hearing transcript indicates otherwise. While it is true that a jury had been assembled to commence trial that morning, it is not unusual for the parties to continue their plea negotiations until an acceptable plea agreement is reached, even after the jury is assembled. Her trial counsel placed a number of reasons in the record for the advisability of her plea, none of which reflect a lack of trial preparation. Neither appellee nor the trial court had to agree to a plea agreement, and the entire discussion by the trial court, appellee, and appellant's trial counsel contains no concern that her trial counsel was unprepared for trial.

7.

{¶ 11} After the trial court ascertained appellant's age, level of schooling, understanding of the English language, and the absence of drugs or medication that would interfere with her understanding of what was taking place, the trial court's lengthy plea colloquy continued, and appellant's answers are coherent, lucid, and direct:

Court: Your attorney said that you are going to enter a plea of guilty pursuant to the Supreme Court case of North Carolina versus Alford to count one in the indictment, which is felonious assault, a felony of the second degree. And in exchange for your plea the State of Ohio will nolle, or dismiss, count two at time of sentencing. The State is requesting a no contact order with the victim, and the State is also recommending a sentence of four to six years. Is that your understanding of what you're doing here today?

A: Yes, ma'am.

Court: And knowing that, do you still wish to go forward with the plea?

A: Yes, ma'am.

Court: Are you satisfied with the amount of time you've had to speak with your attorney about this case?

A: Yes, ma'am.

Court: Are you satisfied with his advice and counsel?

8.

A: Yes.

Court: Did anyone force you to enter this plea?

A: No.

Court: Did anyone promise you anything to get you to enter this plea?

A: No.

Court: You're doing it voluntarily?

A: Yes.

{¶ 12} The trial court then exhaustively reviewed each right appellant was waiving with her *Alford* guilty plea and reviewed each potential sentence and sanction to appellant if the court accepted her plea and found her guilty of felonious assault. The trial court then addressed the reason for appellant's *Alford* guilty plea:

Court: You are entering a plea of guilty but you do not admit committing this offense. Do you understand that?

A: Yes.

Court: The only reason you're entering this plea is to avoid the risk of being convicted of a more serious offense and facing a more serious penalty at trial. Do you understand that?

A: Yes.

* * *

9.

Court: I have in my hand a plea form which appears to have your signature on each of these pages. Is that your signature that appears on this form?

A: Yes, ma'am.

Curt: Did you read the form or have it read to you before you signed it?

A: Yes, ma'am.

Court: Did you have any questions about anything contained in the plea form?

A: No, ma'am.

Court: Do you have any questions about anything that's taking place here today?

A: No, ma'am.

Court: The Court finds the Defendant was advised of all Constitutional rights, understanding the nature of the charge, the effect of the plea and the maximum penalty involved. She made a knowing, intelligent, voluntary waiver of those rights. The plea is accepted and ordered filed and a finding of guilty is made. I'm going to refer this matter to the Probation Department for a presentence report. * * *.

**{¶ 13}** The sentencing hearing was held on April 6. Appellant's trial counsel placed on the record the following mitigation considerations that arose from the presentence investigation report:

Court: This matter is before the Court for sentencing. Mr. Simmons, is there anything you would like to say on behalf of your client?

Counsel: Yes, Judge, please. Thank you. I did review the disclosable portion of the presentence report, Judge, and I did go over it with my client.

* * *

[T]he Defendant pled pursuant to North Carolina versus Alford. I did go over the evidence with her, indicating that the reason why she entered the plea, it was the actual vehicle she was identified with. Be that as it may, she's maintained her position, as you [may have noted] * * * in the significant statements in the presentence report, which she has maintained throughout this event. However, due to the fact that she was closely knitted to this case, she was part of the case because the vehicle that she, at one point, had in her control was part of the case and part of the reason why the victim was injured.

That being said, Judge, we would ask the Court to consider these factors when imposing a sentence on the Defendant. One, very young. Two, I'm not sure the mental health is all together there. Three, she's got

11.

children, but it's just – I think the mental health issue is preventing her from actually being at her best, making the best decisions, being able to make recollections or recall or dealing with certain situations, it's not good. I think that any involvement in this case that she has, she should be punished, but I'm not clear as to what that involvement is.

And since she pled and is found guilty of it, she's here to * * * take whatever this Court is going to issue. And, quite honestly, Judge, incarceration at some point is probably going to be part of the resolution because of the medications, but she can't even take her meds because she's pregnant now.

So I'm not sure what a person that needs meds that has – or has been involved in an incident of this nature, how to deal with it. Other than, she's here to accept her portion of responsibility because she entered the plea. And instead of being convicted by a jury and, possibly, sentenced to the high end, I would ask the Court to consider, maybe sentence her on the low end, maybe with giving her a chance for probation at some point. Or if she can get into CTF for mental health now, it would be something that would probably help her, help the community, help her children, help her family.

{¶ 14} Appellant, again, gave no indication of incompetence when she coherently, lucidly, and directly answered to the trial court's question at sentencing:

12.

Court: Thank you, Mr. Simmons. Ms. Lofton, is there anything you would like to say?

A: Just that I am actually in mental health, it's just that I cannot physically take the meds. But as far as the counseling and everything goes, that's what I'm on for [with Unison services]. My next appointment is on the 19th.

{¶ 15} The trial court then proceeded to announce its sentencing decision, which was the recommendation from the plea deal. Nevertheless, appellant argues that her trial counsel's failure to investigate her obvious mental health issues and require a competency evaluation warrant presuming deficient performance by him. We disagree. Appellant does not argue her incompetence was obvious at her *Alford* guilty plea hearing; rather, she argues at the sentencing phase her trial counsel was ineffective by not seeking to withdraw her plea and then demand a trial, subject to her competency to stand trial. Appellant cites to Justice O'Neill's partial concurrence and partial dissent in *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 361, to support her argument that the two-prong approach in *Strickland* requires a nuanced and more complex analysis to "accurately reflect the decision in *Strickland* itself, or subsequent decisions."

{¶ 16} We find appellant's reliance on Justice O'Neill's discussion in *McKelton* is misplaced and distinguishable from this matter. In that capital-murder case, the

13.

defendant had three trial counsel, all of whom sought to withdraw from representation because the attorney-client relationship had deteriorated too far, but two of them were denied withdrawal. *Id.* at ¶ 355. During the sentencing mitigation phase, those two attorneys failed to hire the ABA-recommended number of trained mitigation specialists for a death-penalty case, and Justice O'Neill goes into great detail as why more should be expected from defense counsel "in the context of a capital-sentencing hearing" of an "exceptional case." *Id.* at ¶ 356-366. There is no support in the record of this matter to analyze it for death-penalty mitigation.

{¶ 17} Appellant also urges us to employ the analyses set forth in the following United States Supreme Court cases: *Hinton v. Alabama*, 571 U.S. 263, 274, 188 L.Ed.2d 1, 134 S.Ct. 1081 (2014) ("The trial attorney's failure to request additional funding in order to replace an expert he knew to be inadequate because he mistakenly believed that he had received all he could get under Alabama law constituted deficient performance."); *Williams v. Taylor*, 529 U.S. 362, 395, 146 L.Ed.2d 389, 120 S.Ct. 1495 (2000) ("[Trial counsel] failed to conduct an investigation [for the sentencing phase] that would have uncovered extensive records graphically describing Williams' nightmarish childhood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records."); and *Lafler v. Cooper*, 566 U.S. 156, 173, 182 L.Ed.2d 398, 132 S.Ct. 1376 (2012) ("[T]he Michigan Court of Appeals identified respondent's ineffective-assistance-of-counsel claim but failed to apply *Strickland* to assess it. Rather

14.

than applying *Strickland*, the state court simply found that respondent's rejection of the plea was knowing and voluntary.").

{¶ 18} We are not persuaded, as the material facts from the foregoing cases are, once again, not present here to support employing any analysis different from the long-standing *Strickland* test. There is no support in the record that appellant's trial counsel, like in *Hinton*, mistakenly believed that he reached a funding cap to retain a firearms expert for a capital-murder case. Nor is there support on the record that appellant's trial counsel failed to offer mitigating evidence of, for example, her borderline mental retardation during sentencing following a capital-murder conviction, like in *Williams*. Nor is there support in the record that appellant's trial counsel improperly advised appellant to reject a plea offer and go to trial as determined during habeas corpus post-conviction relief for an assault-with-intent-to-murder offense, like in *Lafler*. Therefore, appellant's trial counsel's presumption of competence stands.

{¶ 19} An *Alford* plea is a guilty plea while the defendant maintains actual innocence of the charges. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 13. "'The constitutional standard for assessing a defendant's competency to enter a guilty plea is the same as that for determining his competency to stand trial.'" *State v. Hardin*, 6th Dist. Sandusky No. S-18-014, 2021-Ohio-3764, ¶ 15, quoting *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 56.

15.

{¶ 20} Pursuant to R.C. 2945.37(G), appellant is presumed to be competent to stand trial, and she bears the burden to prove by a preponderance of the evidence that she is not competent. *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 32. The two-part test for competency to stand trial is: (1) whether appellant has sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding, and (2) whether appellant has a rational as well as factual understanding of the proceedings against her. *Id.*, citing *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995). A competency hearing, pursuant to R.C. 2945.37(B), is not warranted in the absence from the record of sufficient indicia of incompetence to call into question appellant's right to a fair trial. *Hardin* at ¶ 18, citing *Montgomery* at ¶ 55. The Ohio Supreme Court has found it noteworthy when, as in this case, from the record no one questioned appellant's competency from her behavior in any court proceedings. *Id.* at ¶ 20, citing *Montgomery* at ¶ 57.

{¶ 21} We find the record of the *Alford* guilty plea hearing and of the sentencing hearing show appellant's coherent, lucid and direct responses to all of the trial court's questions, and appellant failed to show otherwise by a preponderance of the evidence. Appellant had both sufficient, present ability to consult with her trial counsel with a reasonable degree of rational understanding, and was satisfied with such consultations and advice from her trial counsel. Appellant also had a rational and factual understanding of the felonious assault proceedings against her and explicitly stated she

16.

offered her *Alford* guilty plea knowingly, voluntarily, and intelligently.  Although appellant maintained her innocence, that is a material reason to offer of an *Alford* guilty plea.

{¶ 22} Due process principles mandate that a legally incompetent defendant shall not be subjected to trial.  *Berry* at 359. However, "incompetency is not automatic upon a proffer of a mental concern for a defendant." *Hardin* at ¶ 15, citing *Neyland* at ¶ 48. "Incompetency must not be equated with mere mental or emotional instability or even with outright insanity.  A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986).  "Incompetency is defined in Ohio as the defendant's inability to understand "* * * the nature and objective of the proceedings against him or of presently assisting in his defense.'" *Id.*, quoting R.C. 2945.37(A).  By this definition, we find the record does not support appellant's self-proclaimed incompetence.

{¶ 23} Nor is there evidence in the record that appellant's mental health history impacted her ability to enter the *Alford* guilty plea.  The standard of validity of an *Alford* plea is "a criminal defendant may enter a guilty plea while maintaining his innocence provided that the plea is entered voluntarily, knowingly, and intelligently and that some factual basis exists to support the allegations in the indictment." *In re Kirby*, 101 Ohio St.3d 312, 2004-Ohio-970, 804 N.E.2d 476, ¶ 15.  On appeal, a criminal defendant whose

17.

guilty plea was accepted by the trial court is limited to attacking the voluntary, knowing, and intelligent character of the guilty plea. *State v. Luna*, 6th Dist. Huron No. H-18-016, 2020-Ohio-3211, ¶ 8.

{¶ 24} The test to determine whether an *Alford* plea was voluntarily, knowingly, and intelligently made is whether: (1) the plea was not the result of coercion, deception or intimidation; (2) trial counsel was present at the time of the plea; (3) trial counsel's advice was competent in light of the circumstances surrounding the plea; (4) the plea was made with the understanding of the nature of the charges; and, (5) the plea was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both. *State v. Morris*, 6th Dist. Lucas No. L-18-1187, 2020-Ohio-704, ¶ 12.

{¶ 25} We reviewed the record and find that all five elements of a valid *Alford* guilty plea are present in this case. We do not find, under the first-prong of the *Strickland* test, a deficient performance by her trial counsel below an objective standard of reasonable representation. We do not find that appellant met her burden by a preponderance of the evidence that her trial counsel's performance was ineffective.

{¶ 26} Appellant's sole assignment of error is found not well-taken.

### III. Postrelease-Control-Advisement

{¶ 27} Given our decision on appellant's assignment of error, we reject appellant's urging that the plain-error doctrine applies to appellant's self-proclaimed incompetency. Ordinarily we would not proceed with any further plain-error inquiry, App.R.

18.

12(A)(1)(b), but appellee presents us with an exceptional circumstance regarding the postrelease-control advisement.

{¶ 28} The Supreme Court of Ohio instructs us to take notice of the Crim.R. 52(B) plain error doctrine "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 62, quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). The extreme caution is necessary for appellate courts, which normally should not consider questions on which the lower court has not ruled, to consider on appeal any issues not first raised before the trial court. *Long* at 95-96, citing Crim.R. 52(B).

{¶ 29} Appellant does not argue on appeal, but appellee acknowledges, that between the date of the offense on January 10, 2021, and the trial court's sentencing hearing on April 6, 2022, R.C. 2967.28(B) was amended, effective on September 30, 2021. The trial court's April 7 sentencing judgment entry states appellant was provided the appropriate postrelease-control advisements, including being "subject to 3 years mandatory post-release control." However, that language is pursuant to former R.C. 2967.28(B)(2) and R.C. 2929.19(B)(2)(d). Rather, appellant is entitled to an advisement of a lesser period of postrelease control. Effective at the time of sentencing, R.C. 2967.28(B)(3), formerly R.C. 2967.28(B)(2), states appellant's postrelease control for a second-degree felony shall be "up to three years, but not less than eighteen months."

19.

**{¶ 30}** If a statute is amended and becomes effective while the defendant's case is pending in the trial court, then R.C. 1.58 guides its application to the pending case. *State v. Mallory*, 8th Dist. No. 111115, 2022-Ohio-3667, 199 N.E.3d 104, ¶ 92. Appellant can seek the benefit of the statutorily-reduced duration of postrelease control. *Id.* at ¶ 95.

**{¶ 31}** The failure of the sentencing entry to properly reflect the period of postrelease-control advisement is not fatal to appellant's sentence for two reasons.

**{¶ 32}** First, we find that R.C. 2929.19(B)(2)(d) and 2967.28(B) operate in tandem to confirm that such error "in the judgment of conviction entered on the journal a statement to that effect [that the offender's sentence includes a period of post-release control] does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender under [R.C. 2967.28(B)]."

**{¶ 33}** Second, the record shows that at the sentencing hearing on April 6, the trial court verbally advised, "Once you're released from prison you're going to have *up to* mandatory three years of post-release control." (Emphasis added.) In addition, the written plea form appellant signed on February 15, notified her that the postrelease control for a second-degree felony was "a mandatory period *of not less than eighteen months but not more than three years*" (Emphasis added.) Upon review of the entire record, we find appellant received the proper postrelease control advisement, even if the sentencing judgment does not reflect it.

{¶ 34} Pursuant to Crim.R. 36, we remand this case to the trial court for the limited purpose of a nunc pro tunc entry to correct the trial court's clerical error in its April 7, 2022 judgment entry so that appellant's postrelease control for a second-degree felony shall be "up to three years, but not less than eighteen months" pursuant to R.C. 2967.28(B)(3), formerly R.C. 2967.28(B)(2). *State ex rel. Randlett v. Lynch*, 168 Ohio St.3d 568, 2022-Ohio-3260, 200 N.E.3d 236, ¶ 15; *State v. Irving*, 6th Dist. Wood No. WD-22-009, 2022-Ohio-4019, ¶ 11.

### IV. Conclusion

{¶ 35} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part, for the limited purpose of a nunc pro tunc entry to correct the trial court's April 7, 2022 judgment entry that appellant's postrelease control for a second-degree felony shall be "up to three years, but not less than eighteen months" pursuant to R.C. 2967.28(B)(3). Appellant and appellee are ordered to equally pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                   _____

                                                                   JUDGE

Christine E. Mayle, J.

                                                     _____

Gene A. Zmuda, J.                                     JUDGE
CONCUR.

                                                                    _____

                                                                      JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.