[Cite as *State v. Lewton*, 2024-Ohio-5353.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No.  L-23-1254

        Appellee                                 Trial Court No.  CR0202202724

v.

Travis Lewton                                        **DECISION AND JUDGMENT**

        Appellant                                Decided:  November 8, 2024

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**DUHART, J.**

**{¶ 1}** Appellant, Travis Lewton, appeals his conviction entered by the Lucas

County Common Pleas Court following his *Alford* guilty plea to one count of aggravated

murder and one count of abuse of a corpse. For the reasons that follow, the trial court's

judgment is affirmed.

## Statement of the Case

{¶ 2} On October 11, 2022, appellant was charged by indictment as follows: Count 1, aggravated murder, in violation of R.C. 2903.01(A) and (G), an unclassified felony; Count 2, murder, in violation of R.C. 2903.02(B) and 2929.02, an unclassified felony; Count 3, felonious assault with a firearm specification, in violation of R.C. 2903.11(A)(1) and (D), a felony of the second degree; Count 5, tampering with evidence, in violation of R.C. 2921.12(A)(1) and (B), a felony of the third degree; and Count 6, abuse of a corpse, in violation of R.C. 2927.01(B) and (C), a felony of the fifth degree.

{¶ 3} On October 25, 2022, counsel for appellant entered a plea of not guilty by reason of insanity ("NGRI") and filed a motion for a competency evaluation. On October 26, 2022, the trial court referred the matter to the Court diagnostic and Treatment Center for both an NGRI determination and a competency evaluation.

{¶ 4} On January 5, 2023, appellant was found competent to stand trial. At the request of appellant's counsel, the matter was referred for a second evaluation for competency and NGRI, with the defense to provide the evaluator with appellant's past treatment information.

{¶ 5} On March 15, 2023, appellant was again found competent to stand trial and, further, was found not to qualify for NGRI status. Following the trial court's announcement of these findings, appellant entered a plea of not guilty as to all counts.

{¶ 6} On July 27, 2023, the trial court granted appellant's request for a third mental health evaluation. This time, appellant sought and received leave to obtain a full psychiatric evaluation and testing for any and all diagnosable conditions, with

2.

recommendations for further treatment, including medication recommendations if possible.

{¶ 7} On October 5, 2023, appellant entered a plea of guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), as to Count 1, aggravated murder, and Count 6, abuse of a corpse. The trial court proceeded directly to sentencing, ordering appellant to serve a term of life in prison without the possibility of parole on Count 1, together with a prison term of eleven months on Count 6, with the sentences ordered to be served concurrently. Appellant timely filed an appeal.

## Statement of the Facts

### Report of Greg Hupp, Ph.D.

{¶ 8} In a report dated December 16, 2022, psychologist Greg Hupp, Ph.D., concluded that appellant was not mentally ill or intellectually disabled. He stated that although appellant had dealt with "some depression and anxiety," those conditions were currently managed with medication. Hupp further provided that appellant was able to demonstrate appropriate understanding and appreciation of: the charges against him; the range and nature of possible penalties (including the possibility of life in prison); available pleas; and relevant legal strategies, such as plea bargaining. In addition, Hupp opined that appellant was able to relate appropriately to his own attorney; could comprehend instructions; could evaluate legal advice; and could make rational decisions based on the legal advice he was given. Overall, it was Hupp's professional opinion, to a degree of reasonable psychological certainty, that appellant was able to understand the

3.

nature and objective of the proceedings against him and was able assist in his own defense. Thus, it was Hupp's opinion that appellant was competent to stand trial.

## Report of Mark A. Babula, Psy.D.

{¶ 9} In a report dated March 13, 2023, clinical psychologist Mark A. Babula, Psy.D., provided a second opinion for competency. Noting that appellant's self-reported symptoms were consistent with "feigned mental illness," Babula concluded that appellant was capable of understanding the nature and objective of the proceedings against him and of assisting in his own defense. According to Babula, appellant "suffers from [unspecified] mental illness, but not to an extent that his illness severely interferes with his competency."

## Report of Jonathan W. Sirkin, M.D.

{¶ 10} Psychiatrist, Jonathan W. Sirkin, M.D., issued a report dated September 9, 2023, wherein he concluded that appellant met the criteria for a diagnosis of: 1) "Major Depressive Disorder, Severe, currently In Full Remission with treatment;" 2) "Social Anxiety Disorder (Social Phobia);" 3) "Cannabis Use Disorder, Severity Unspecified, In Sustained Remission in a Controlled Environment;" and 4) "Schizotypal Personality Disorder," which he defined as "'[a] pervasive pattern of social and interpersonal deficits marked by acute discomfort with, and reduced capacity for, close relationships as well as by cognitive or perceptual distortions and eccentricities of behavior.'" Sirkin opined that appellant's depression and anxiety disorders were responding well to treatment with antidepressant medication, but that his schizotypal personality disorder was "a more difficult prospect," because, "[b]y definition, personality disorders are an 'enduring

4.

pattern of inner experience and behavior.'" According to Sirkin, "there is no realistic chance of fully 'curing' a personality disorder which is a fundamental part of how a person interacts with the world around them."

**October 5, 2023 Change of Plea Hearing**

{¶ 11} At appellant's October 5, 2023 change of plea hearing, the trial court thoroughly inquired of appellant as to his understanding of: the proceedings; the charges; the possible sentences, including a possible sentence of life imprisonment without parole; and the rights that he would be giving up by pleading guilty pursuant to *Alford*. In open court, appellant confirmed his understanding as to the foregoing and, further, indicated his continuing desire to change his plea. He also indicated that he had had enough time to speak with his attorneys about the nature of the charges and any defenses he might have and that he was satisfied with his attorneys' advice. Appellant denied having any mental health conditions that would affect his understanding of the proceedings, and he stated that no one had threatened him to get him to enter his plea. At one point, the trial court asked appellant whether he was entering his *Alford* plea to avoid greater sentencing exposure should there be conviction on all charges. Appellant answered in the affirmative.

{¶ 12} The State offered the following statement of facts in support of the charges:

> With respect to Count 1, had that matter proceeded to trial the State of Ohio would have presented evidence to prove beyond a reasonable doubt that Travis Lewton, on or about October 1st, 2022, in Lucas County, Ohio, did purposely, and with prior calculation and design, cause the death of another, in violation of 2903.01(A) & (G) of the Revised Code constituting the offense of aggravated murder.

5.

With respect to Count 6, again, the State would have provided evidence sufficient to prove beyond a reasonable doubt that Travis Lewton, on or about October 21, 2022, in Lucas County, Ohio did knowingly, and without legal authorization, treat a human corpse in a way that would outrage reasonable community sensibilities, in violation of 2927.01(B) & (C) of the Revised Code constituting the offense of abuse of a corpse.

Specifically…the evidence would have shown that on October 1, 2022, Toledo Police officers were dispatched to 1865 Wildwood located … in Toledo, Lucas County, Ohio to check the safety of a missing adult, Nancy Lewton.

The concern was that Miss Lewton left the State of Georgia where she was temporarily staying, and that she left on September 28, 2022, with a stated intention to drive straight home to her residence at 1864 Wildwood where she lived with her son, the Defendant, Travis Lewton.

The concern was that Miss Lewton had not been heard from since her departure from Georgia, which was very unusual for Miss Lewton.

Upon arrival to the address officers were met with Miss Lewton's niece, Lara Malick. Together they were able to make contact with the Defendant who was seen inside the residence but refused to open the door.

Cell phone evidence determined that Miss Lewton's cell phone was within 300 feet of the home and officers observed in plain view on the back deck of the home muddy boots with burrs on them, a plastic sheet, clippers, and then in the ravine behind the home officers noticed a wheel barrel [sic].

The officers ultimately made the decision to force entry into the home to check Miss Lewton's safety. She was not found inside the home. However, at that time the Defendant was taken into custody and a search warrant was obtained.

Officers found Miss Lewton's purse, cell phone, and credit cards inside the garage of the home. Officers found the

victim's vehicle and a large area rug rolled up with bodily fluids on it.

Officers continued their search for Miss Lewton down in the ravine behind her home. Next to the wheel barrel [sic] they had observed – they found a hand dolly, gas can, and a hand pump normally used for pesticide sprayer.

Upon further searching officers located a vertical sewer pipe with what appeared to be charred debris inside. A member of the Toledo Police Department Scientific Investigation Unit entered the pipe and observed and collected what was later confirmed as Miss Lewton's remains.

Her death was ruled a homicide by unspecified means as the body was extensively charred and … the majority of her body was reduced to bone and ash.

The Defendant was interviewed and initially denied even knowing his mother had returned home from Georgia but quickly admitted that his mother had, in fact, returned home from Georgia, and that he had planned to kill his mother because he had been angry with her regarding some family matters and the fact that Miss Lewton was not giving the Defendant enough money for food.

When she returned home from Georgia the Defendant stated he did not give her an opportunity to say anything, and that he attacked her in the kitchen of her home.

He further indicated that he stopped her breathing by strangling her with his elbow.

He then further admitted to trying to cover up what he had done by transporting her body to the ravine behind the home placing her body in the sewer and lighting a fire causing the majority of Miss Lewton's body to be consumed.

With that statement of facts the State of Ohio is asking the Court to make findings of guilty regarding Count 1, aggravated murder and Count 6, abuse of a corpse.

{¶ 13} Following the State's recitation of the facts, the trial court asked appellant whether he had any questions. He answered that he did not. Thereafter, the court determined on the record that appellant had been advised of his constitutional rights; that he had an understanding of the nature of the charges against him, the effect of his plea, and the maximum penalties involved; and that he had made a knowing, intelligent, and voluntary waiver of his rights pursuant to Crim.R. 11. Thereafter, the trial court accepted appellant's plea and found him guilty as to the charges set forth in the first and sixth counts of the indictment.

### Written Plea Agreement

{¶ 14} The written plea agreement that was signed by appellant provides: "I understand the MAXIMUM penalties COULD be: a maximum basic prison term of **Life imprisonment without parole** of which **20 years** is mandatory, during which I am NOT eligible for judicial release or community control." (Emphasis in original.)

### Assignments of Error

{¶ 15} On appeal, appellant asserts the following assignments of error:

I.  Appellant's guilty plea, pursuant to *North Carolina v. Alford,* was not entered knowingly, intelligently, and voluntarily.

II. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Ohio Constitution.

### Law and Analysis

8.

### I. Appellant's *Alford* Guilty Plea was Knowingly, Intelligently, and Voluntarily Entered.

{¶ 16} In his first assignment of error, appellant asserts that his plea was not knowingly, intelligently or voluntarily entered. Specifically, appellant argues that "given his well-documented history of mental illness," "his understanding of the penalties he faced by entering a guilty plea pursuant to *North Carolina v. Alford* was limited if not unascertainable."

### Competency to Enter *Alford* Plea

{¶ 17} "An *Alford* plea is a guilty plea while the defendant maintains actual innocence of the charges." *State v. Lofton*, 2023-Ohio-2796, ¶ 19 (6th Dist.), citing *State v. Griggs*, 2004-Ohio-4415, ¶ 13. "'The constitutional standard for assessing a defendant's competency to enter a guilty plea is the same as that for determining his competency to stand trial.'" *State v. Hardin*, 2021-Ohio-3764, ¶ 15 (6th Dist.), quoting *State v. Montgomery*, 2016-Ohio-5487, ¶ 56.

{¶ 18} Pursuant to R.C. 2945.37(G), a defendant is presumed to be competent to stand trial, and it is the defendant's burden to prove, by a preponderance of the evidence, that he is not competent. *Lofton* at ¶ 20, citing *State v. Neyland*, 2014-Ohio-1914, ¶ 32. "The two-part test for competency to stand trial is: (1) whether appellant has sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding, and (2) whether appellant has a rational as well as factual understanding of the proceedings against [him]." *Id.*, citing *Neyland* at ¶ 32. (Additional citation omitted.)

9.

{¶ 19} Upon review of the record, we find that the evidence supports the trial court's conclusion that appellant was competent. First, the reports from psychologists Hupp and Babula expressly indicate that appellant was capable of understanding the nature and objective of the proceedings against him and in assisting in his defense. (Notably, nothing in psychiatrist Sirkin's report contradicts these findings.)

{¶ 20} In addition, the record of the *Alford* guilty plea hearing demonstrates that appellant responded coherently and directly to all of the trial court's inquiries, explanations, and admonitions. These responses indicate that appellant had sufficient, present ability to consult with his trial counsel with a reasonable degree of rational understanding and that he was satisfied with the advice he received from his trial counsel. In addition, appellant demonstrated a rational and factual understanding of the proceedings against him, including the fact that by pleading guilty to aggravated murder pursuant to *Alford*, he exposed himself to the possibility of receiving a sentence of life in prison without parole. As he indicated during the change of plea hearing, he made the decision to enter his *Alford* plea in order to avoid even greater sentencing exposure.

{¶ 21} In reaching this conclusion, we note that "incompetency is not automatic upon a proffer of a mental concern for a defendant." *Hardin* at ¶ 15, citing *Neyland* at ¶ 48. (Additional citation omitted.) "'Incompetency must not be equated with mere mental or emotional instability or even outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.'" *Lofton* at ¶ 22, quoting *State v. Bock*, 28 Ohio St.3d 108, 110 (1986). "Furthermore, the fact that a defendant is taking prescribed psychotropic

10.

medication[] does not negate his competency to stand trial or plead guilty." *State v. Edwards*, 2023-Ohio-4173, ¶ 20 (12th Dist.), citing *State v. Lawson*, 2021-Ohio-3566, ¶ 59; *see also* R.C. 2945.37(F) (a court shall not find a defendant incompetent because the defendant is receiving or has received psychotropic drugs, even if the defendant might become incompetent to stand trial without the drugs or medication). In the instant case, we find the record does not support appellant's self-proclaimed incompetence.

### Test to Determine whether *Alford* Plea was Voluntarily, Knowingly, and Intelligently Made

{¶ 22} "The test to determine whether an *Alford* plea was voluntarily, knowingly, and intelligently made is whether: (1) the plea was not the result of coercion, deception or intimidation; (2) trial counsel was present at the time of the plea; (3) trial counsel's advice was competent in light of the circumstances surrounding the plea;[1] (4) the plea was made with the understanding of the nature of the charges; and, (5) the plea was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both." *Lofton* at ¶ 24, citing *State v. Morris*, 2020-Ohio-704, ¶ 12. We reviewed the record and find that all five elements of a valid *Alford* guilty plea are present in this case.

{¶ 23} For all of the foregoing reasons, appellant's first assignment of error is found not well-taken.

### II.    Appellant has Failed to Establish a Claim for Ineffective Assistance of Counsel.

---

[1] We address and dispose of appellant's claim for ineffective assistance of counsel in our discussion of appellant's second assignment of error.

11.

{¶ 24} In his second assignment of error, appellant asserts that he was denied the effective assistance of trial counsel. Specifically, appellant argues that given his counsel's knowledge of his mental health issues, his counsel was ineffective in failing to attempt to suppress his confession.

{¶ 25} To establish a claim for ineffective assistance of counsel, appellant has the burden of showing: 1) deficient performance by his trial counsel below an objective standard of reasonable representation; and 2) prejudice such that there is a reasonable probability that but for counsel's mistakes, the outcome of the case would have been different, i.e., that appellant would not have entered an *Alford* plea of guilty to one count of aggravated murder and one count of abuse of a corpse and, instead, would have proceeded to trial. *See State v. Lofton*, 2023-Ohio-2796, ¶ 8 (6th Dist.), citing *State v. Hamblin*, 37 Ohio St.3d 153, 157 (year), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

{¶ 26} In reviewing appellant's argument, we note that "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *State v. Madrigal,* 87 Ohio St.3d 378, 389 (year), citing *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "Thus, the failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made." *State v. Brown*, 2002-Ohio-5455, ¶ 11. (Additional citations omitted.) In the instant case, counsel fails to identify any legally cognizable grounds on which appellant's challenge could have been successful. Even if any such grounds

12.

existed, they are not contained in the record. Accordingly, appellant fails to establish a claim that his counsel was ineffective for failing to pursue a motion to suppress.

{¶ 27} In addition, appellate counsel fails to assert -- and our review of the record fails to reveal -- that but for trial counsel's alleged ineffectiveness, appellant would not have pled. His failure to argue this prejudice forecloses review of the issue. *See State v. Hall*, 2023-Ohio-4539, ¶ 21 (8th Dist.). Appellant's second assignment of error is found not well-taken.

**Conclusion**

{¶ 28} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

_____
JUDGE

Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.